IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VERA D. ERVINGTON,             )
                               )
        Plaintiff,             )
                               )
    v.                         )  No. 09 C 7313
                               )
LTD COMMODITIES, LLC,          )
                               )
        Defendant.             )

# OPINION AND ORDER

*Pro se* plaintiff Vera D. Ervington, a former employee of defendant LTD Commodities, LLC ("LTD"),[1] brought this action claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Plaintiff's motion for assistance of counsel was granted. The court has jurisdiction of the subject matter and the parties.

In July 2002, plaintiff began her employment with defendant in the Credit and Collections Department. Plaintiff claims that she was denied a promotion to the position of Assistant Supervisor in February 2007 because of her

---

[1]The original and amended Complaints misname defendant. The correct defendant is LTD Commodities, LLC, which will be substituted in as defendant.

African-American race and her Christian religion.[2] In April 2007, plaintiff initiated a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff was discharged in November 2009. She claims that her discharge was because of her religion and also in retaliation for filing charges of discrimination with the EEOC in 2007.

The case is now before the court on defendant's motion for summary judgment. After discovery was complete, plaintiff's appointed attorneys withdrew. Plaintiff was proceeding *pro se* when she responded to summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. ***Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.***, 555 U.S. 271, 274 n.1 (2009); ***Malen v. MTD Prods., Inc.***, 628 F.3d 296, 303 (7th Cir. 2010); ***Stokes v. Bd. of Educ. of City of Chicago***, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. ***Ponsetti v. GE Pension Plan***, 614 F.3d 684, 691 (7th Cir. 2010); ***Outlaw v. Newkirk***, 259 F.3d 833, 837 (7th Cir.

---

[2] In her answer brief opposing summary judgment, plaintiff also refers to being denied a promotion because of retaliation. However, the denial of a promotion occurred prior to raising any complaint of discrimination so any claim of retaliatory denial of a promotion fails.

2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district

court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Inasmuch as plaintiff is proceeding *pro se*, the court will not require her strict compliance with all of the formal provisions of Fed. R. Civ. P. 56 and

- 4 -

Local Rule 56.1. *See* ***Bey v. Shinseki***, 2012 WL 4434651 *1 (N.D. Ill. Sept. 20, 2012); ***Sklyarsky v. ABM Janitorial Servs., Mw.***, 2012 WL 174647 *3 (N.D. Ill. Jan. 18, 2012), *aff'd sub nom. by unpublished order*, ***Sklyarsky v. ABM Janitorial Servs.-N. Cent., Inc.***, 494 F. App'x 619 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 1247 (2013); ***Morrow v. Potter***, 2011 WL 663029 *2 (N.D. Ill. Feb. 10, 2011). Plaintiff has been advised of the content of the Rules as required by Local Rule 56.2 and Seventh Circuit precedent.

Defendant is a catalog retailer selling general merchandise, including housewares, small electronics, and apparel. It has approximately 1,000 full-time and part-time employees. Orders are shipped from two distribution centers in Bannockburn, Illinois and Aurora, Illinois.

At the time of her employment in 2002 at the Bannockburn center, plaintiff had five years experience in collection work at Xerox Corporation. Ervington was employed at LTD from July 2002 until November 19, 2009. She was given periodic increases in pay in 2003, 2004, and 2005. On April 25, 2005, plaintiff was promoted to Collections Specialist Team Lead in the Collections Department and received a pay increase. In June 2006, she was reassigned to the

Outbound Collections Team Lead. In her Team Lead positions, she supervised and monitored between eight and twelve employees.

LTD has stated in writing that racial, sexual, and religious harassment is forbidden. Plaintiff does not dispute that she received a written copy of LTD's Harassment & Sexual Harassment Policy when she started in 2002 and that she attended training relating to this policy.

It was the practice of LTD to hold a potluck lunch in the Collections Department each year around Halloween. In October 2005, Ervington held a meeting with her team to explain her religious objections to the observance of Halloween. Later, at her instance, the name of the event was changed. However, Ervington was counseled not to include religious views with business matters. Also, Ervington's own notes of a meeting on November 17, 2006 with Vice President Juliana Furlong state that she was counseled not to pass tracts because of her leadership position.

An employee who said she was not comfortable with Ervington's supervision and the discussion of religious beliefs was disciplined for telling Ervington to "shut up." Ervington was then admonished concerning her supervisory approach.

In June 2006, there was an open position for Assistant Supervisor. Plaintiff and two other candidates applied. Nicole Dunlap-Williams, African-American, who held a position of Supervisor, chose to step down for personal reasons and was given the position. Adrienne Campbell, African-American, an Assistant Supervisor, was chosen to fill the Supervisor position and her promotion left a vacancy. The position was first offered to Sherese Mays, African-American. She declined, preferring to remain in her position as a Trainer.

The remaining candidates for the Assistant Supervisor position were Ervington and Amelia Coleman Martinez ("Coleman"), Hispanic. Coleman was selected in February 2007. Coleman began with LTD in 1998, over four years before Ervington. She had received promotions and had a Team Lead position. She was noted to have strong supervisory and organizational skills according to a performance appraisal and was found to have overcome any previous attendance problems. Plaintiff does not challenge Coleman's qualifications or the good-faith basis for the selection. She alleges, however, that she was as well qualified as Coleman. Plaintiff has stated that she could "neither confirm nor deny the motives of LTD in choosing Coleman over herself." However, she contends that the decision to appoint Coleman was delayed in order to allow Coleman to be eligible

for promotion. Under LTD practices, an employee cannot apply for a new position until after six months in an existing position. Coleman had been promoted to her prior position within the previous year.

Plaintiff filed a race and religion complaint with the EEOC in April 2007.

In June 2007, another assistant supervisor position was open in the Collections Department. Ervington was asked if she wished to apply and declined.

In November 2009, Craig Tisdale, a Collections Department Supervisor, notified the Human Resources Department Manager of a complaint that Ervington was distributing Gospel tracts to employees and made remarks to Asad Tanwir, an information technology employee, about Islam, including that "his religion was wrong." Ervington has admitted distributing four tracts titled "Unforgiven," "Last Rights," "The Letter," and "The Empty Tomb." The tracts are drawings with text stating religious positions. "Unforgiven" denigrates the Islamic faith by calling Muhammad an antichrist and portraying his followers as violent criminals in hell. "Unforgiven" denigrates the Catholic faith and states that its followers will go to hell. When interviewed, Ervington admitted the distribution of the tracts. She

stated that she could neither confirm nor deny how someone may feel offended by the tracts.

Plaintiff does not dispute that she was terminated on November 19, 2009 due to her distribution of derogatory religious material that violated LTD's Harassment Policy. Plaintiff has not offered any testimony or evidence to directly show that her termination was based on race or retaliation.

Plaintiff claims that her discharge is inconsistent with the fact that two other disciplined employees had not been terminated.

Craig Tisdale, Caucasian male, was warned for his conduct, on the complaint of an employee who felt uncomfortable with his attention. The employee was under his supervision. He urged her to apply for an Assistant Supervisor position, which she did not wish to do, and invited her to visit his boat. He was given a disciplinary warning and told not to continue his unwanted attentions.

Tanwir, a Muslim, was given a final warning. Tanwir said to a Christian, "you should study Islam because that is better and the right way to learn about God," and "you should not eat pork because that is wrong according to

teachings." The employee objected to these statements. Tanwir was warned not to repeat such statements.

It is undisputed that neither Tisdale or Tanwir had been previously counseled or warned with respect to the conduct for which they were disciplined with warnings but not a termination.

Plaintiff relies on the indirect method of proof of discrimination. For present purposes, the same standards apply to both Title VII and § 1981 discrimination.³ ***Hobbs v. City of Chicago***, 573 F.3d 454, 460 n.1 (7th Cir. 2009). Under the indirect method of showing discrimination in employment, "a *prima facie* case of employment discrimination creates a rebuttable presumption that the employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer satisfies that burden, the plaintiff must then show that these articulated reasons are pretextual." ***Grayson v. City of Chicago***, 317 F.3d 745, 748 (7th Cir.2003). For a failure-to-promote claim, a *prima facie* case ordinarily is satisfied by showing "1) [plaintiff] belongs to a protected class [African-American or Christian], 2) [s]he applied for and was

---

³Section 1981 does not apply to religious discrimination or retaliation based on complaining of religious discrimination.

- 10 -

qualified for the position sought, 3) [s]he was rejected for that position and 4) the employer granted the promotion to someone outside of the protected group [non-African-American or non-Christian] who was not better qualified than the plaintiff." *Id.* For a discharge based on discrimination, the ordinary *prima facie* case is a showing that (1) plaintiff is a member of a protected class (Christian); she was performing well enough to meet her employer's legitimate expectations; (3) she was discharged; and (4) similarly situated non-Christian employees were treated more favorably. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010). For a retaliatory discharge, a *prima facie* case may be made out by showing "(1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered a materially adverse action [discharge] by [her] employer; and . . . [(3)] [s]he was performing [her] job satisfactorily and [4] that [s]he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009).

Plaintiff fails to make out any *prima facie* case because she fails to satisfy the last element for any of her claims, that is, she fails to show another similarly situated person outside her protected group was treated more favorably. In order to be similarly situated, the other employee must be comparable in all

material respects, which generally includes that plaintiff and the comparator had the same type of job, were subject to the same standards, had comparable experience and qualifications, engaged in similar misconduct, and had the same supervisors. ***Bodenstab v. Cty. of Cook***, 569 F.3d 651, 657 n.2 (7th Cir. 2009). The "'similarly-situated' . . . test involves a flexible, common-sense approach with requirements that vary from case to case. Regardless of the context, however, the purpose of the test remains the same: to discern whether there are sufficient common factors between the plaintiff and another employee to allow for a meaningful comparison in order to divine whether discrimination was involved in an employment decision." *McGowan v. Deere & Co.,* 581 F.3d 575, 579-80 (7th Cir. 2009). *See also **Arizanovska v. Wal-Mart Stores, Inc.***, 682 F.3d 698, 703 (7th Cir. 2012).

As to the promotion claim, undisputed evidence supports that the candidate that was instead promoted was reasonably regarded as more qualified than plaintiff. Even if the position was kept open so that Martinez could meet an applicable time requirement, there is no basis for inferring that this was done because of race or religion and not because Martinez was preferred because more qualified. The failure to promote claim will be dismissed.

As to the discharge claims, the referenced comparators were not similarly situated because, unlike plaintiff, they had not been previously warned regarding their conduct. There is no evidence that either comparator committed any further misconduct following being admonished. Additionally, enforcing a neutral, anti-harassment policy by prohibiting the type of conduct engaged in by plaintiff is not religious discrimination that violates Title VII. *See* ***Matthews v. Wal-Mart Stores, Inc.***, 417 F. App'x. 552, 555 (7th Cir. 2011); ***Peterson v. Hewlett-Packard Co.***, 358 F.3d 599, 605-08 (9th Cir. 2004). Further, there is evidence that the anti-harassment policy was also applied to a Muslim (Tanwir) who criticized the religious practices of others. Since plaintiff fails to make out a *prima facie* case of a discriminatory or retaliatory discharge, those claims will be dismissed.

IT IS THEREFORE ORDERED that LTD Commodities, LLC is substituted for defendant "LTD Commodities/ABC Distributing Legal Owner of Business." The Clerk of the Court is directed to amend the docket accordingly. Defendant's motion for summary judgment [59] is granted. The Clerk of the Court is further directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice. If plaintiff wishes to appeal

today's ruling, she must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of the entry of the judgment in this case. *See* Fed. R. App. P. 4(a)(1)(A).

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: APRIL 15, 2013